WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP.
*Attorneys for Defendant/Third-Party Plaintiff*
*ARAMARK HEALTHCARE SUPPORT SERVICES, LLC*
3 Gannett Drive
White Plains, NY 10604
(914) 323-7000

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x
TERESA CIPOLLONE AND              :   No. 10-CV-00175 (RML)
FRANK CIPOLLONE,
                                  :
            Plaintiffs,               **MEMORANDUM OF LAW IN**
                                  :   **SUPPORT OF THE**
    -against-                         **DEFENDANT/THIRD-PARTY**
                                  :   **PLAINTIFF'S MOTION FOR**
ARAMARK HEALTHCARE SUPPORT            **SUMMARY JUDGMENT**
SERVICES, LLC                     :

                                  :
            Defendant
------------------------------------x
ARAMARK HEALTHCARE SUPPORT        :
SERVICES, LLC
                                  :

            Third-Party plaintiff,
                                  :
    - against -
                                  :
STONHARD INC.,
                                  :
            Third-Party Defendant.
------------------------------------x
STONCOR GROUP, INC.               :

            Second Third-Party plaintiff, :

    - against -                   :

METRO FLOORS, INC.
                                  :
            Second Third-Party Defendant. :

------------------------------------x

3416449.5

# MEMORANDUM OF LAW IN SUPPORT OF THE DEFENDANT/THIRD-PARTY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

WILSON, ELSER, MOSKOWITZ
EDELMAN, & DICKER, LLP
Joseph P. Wodarski, Esq. (JW 0557)
*Attorneys for Defendant/Third-Party Plaintiff*
*ARAMARK HEALTHCARE SUPPORT SERVICES, LLC*
3 Gannett Drive
White Plains, NY 10604
(914) 323-7000
File No. 00804.00039

On Brief:

Joseph P. Wodarski, Esq.

3416449.5

# **TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................................. 1
JURISDICTION ............................................................................................................... 2
PROCEDURAL HISTORY............................................................................................... 2
STATEMENT OF FACTS ................................................................................................ 3
    A.    The Incident ................................................................................................ 3
    B.    ARAMARK ............................................................................................... 3
    C.    Plaintiff........................................................................................................ 5
ARGUMENT
    I.    SUMMARY JUDGMENT STANDARD............................................................ 6
    II.    SUMMARY JUDGMENT IS WARRANTED BECAUSE ARAMARK WAS PLAINTIFF'S SPECIAL EMPLOYER ............................................................. 7
    A.    Workers' Compensation Benefits Are The Exclusive Remedy For An Injured Worker Of A General Or Special Employer ........................................ 7
    B.    All Admissible Evidence Confirms That Teresa Cipollone Was ARAMARK's Special Employee.................................................................... 9
    C.    This Case Is Analogous To Holdings Where A "Special Employment" Relationship Was Found As A Matter Of Law ......................................10
CONCLUSION................................................................................................................12

## TABLE OF AUTHORITIES

**CASES**                                                                                                                    **Page**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 248-9 (1986) .......................................................................................... 6, 7

*Brooks v. Chemical Leaman Tank Lines, Inc.*,
    71 A.D.2d 405 (1st Dep't 1979) ........................................................................................ 8

*Bryan v. Maffucci*,
    923 F.2d 979, 982 (2d Cir. 1991) ...................................................................................... 6

*Carey v. Crescenzi*,
    923 F.2d 18, 21 (2d Cir. 1991) .......................................................................................... 7

*Carino v. Kenmare Remodeling*,
    292 A.D.2d 555, 739 N.Y.S.2d 592 (2d Dept., 2002) *lv. Denied*, 98 N.Y.2d
    608 ................................................................................................................................ 1, 8

*Gannon v. JWP Forest Electric Corporation*,
    275 A.D.2d 231, 712 N.Y.S.2d 494, 495 (1st Dept., 2000) ............................................... 9

*Hayes v. New York City Department of Corrections*,
    84 F.3d 614, 619 (2d Cir. 1996) ........................................................................................ 6

*Lang v. Retirement Living Public Co.*,
    949 F.2d 576, 580 (2d Cir. 1991) ...................................................................................... 6

*Matsushita Electric Indust. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) .......................................................................................................... 7

*Richiusa v. Kahn Lumber & Millwork Co.*,
    148 A.D.2d 690 (2d Dept 1989) ...................................................................................... 12

*Shoemaker v. Manpower*,
    223 A.D.2d 787, 635 N.Y.S.2d 816, 817 *lv. denied*, 88 N.Y.2d 874 (1996) ................... 9

*Suarez v. Food Emporium, Inc.*,
    16 A.D.3d 152 (1st Dept 2005) ......................................................................................... 8

*Szymanski v. Aramark Facility Services Inc.*,
    297 A.D.2d 829 (3d Dept 2002) ...................................................................................... 12

*Thompson*,
    78 N.Y.2d at 553, 554, 585 N.E.2d 335, 578 N.Y.S.2d 106 (1991) ........................ 1, 7, 8

*Vanderwerff v. Victoria Home*,
    2002 N.Y. Slip Op. 07988 (2d Dept., Nov. 4, 2002) .................................................... 1, 8

*Villanueva v. Southeast Grand St. Guild Hous. Dev. Fund Co.*,
    37 A.D.3d 155 (1st Dept 2007) ....................................................................................... 12

**STATUTES**

28 U.S.C. § 1332(a) ................................................................................................................. 4, 5

Workers' Compensation Law §§ 11 and 29(6)....................................................................7

**RULES**

Fed. R. Civ. P., Rule 56(c)..............................................................................................6, 7

3479650.1

## INTRODUCTION

Defendant/Third-Party Plaintiff ARAMARK HEALTHCARE SUPPORT SERVICES, LLC's ("ARAMARK"), respectfully submits this Memorandum of Law in support of its motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment dismissing each and every claim against it, on the basis that plaintiff was ARAMARK's "special employee" or "borrowed servant" at the time of the accident.

This is a personal injury action arising from a slip and fall incident that occurred on December 20, 2006, at plaintiff Teresa Cipollone's place of employment, Staten Island University Hospital ("SIUH") in Staten Island, New York. Plaintiff was a dietary aide under the general employment of SIUH, which had a Management Services Agreement contract with ARAMARK that required ARAMARK to solely direct, control, and supervise the work activities of plaintiff and other SIUH food services workers. Plaintiff was therefore a special employee of ARAMARK.

When an employee of a general employer is found to be in the special employ of another, the Workers' Compensation Law is the exclusive remedy for injuries to the special employee, and the special employee is barred from bringing a negligence action against the special employer for injuries sustained during the course of employment.[1] Here, the undisputed facts indicate that plaintiff and the other hourly workers in the SIUH food service department were supervised exclusively by ARAMARK's staff of supervisors, and the only remedy for her alleged injuries under New York law is worker's compensation. This action cannot be maintained against ARAMARK and summary judgment is warranted as a matter of law.

---

[1] *Thompson* 78 N.Y.2d at 553; *Vanderwerff v. Victoria Home*, 2002 N.Y. Slip Op. 07988 (2d Dept., November 4, 2002); *Carino v. Kenmare Remodeling*, 292 A.D.2d 555, 739 N.Y.S.2d 592 (2d Dept., 2002) *lv. denied*, 98 N.Y.2d 608.

1

3416449.5

## JURISDICTION

As the amount in controversy is greater than $75,000, and plaintiff and defendant are citizens of different states, this Court has original (diversity) jurisdiction over this case under 28 U.S.C. § 1332(a). (See Ex. "B," Notice of Removal).

## PROCEDURAL HISTORY

Plaintiff commenced this lawsuit by filing a Summons and Complaint on or about December 10, 2009. (See Ex. "A," Summons and Complaint). ARAMARK then removed this action to this Honorable Court on January 11, 2010. Removal to this Court was based on diversity of citizenship. (See Ex. "B," Notice of Removal). ARAMARK joined issue by serving a Verified Answer on Plaintiff on January 15, 2010. (See Ex. "C," ARAMARK's Verified Answer).

ARAMARK commenced a third-party action against STONHARD INC. ("Stonhard") on March 19, 2010, seeking contribution and/or indemnification based upon Stonhard Inc.'s contract with SIUH to renovate the floor in the kitchen and dish room at SIUH in the days prior to the accident. The floor was allegedly installed in such a manner as to be unduly slippery. (See Ex. "D," ARAMARK's Third-Party Summons and Complaint). STONCOR GROUP, INC. ("Stoncor"), answering for STONHARD, joined issue by serving its Answer on May 11, 2010. (See Ex. "E," Stoncor's Third-Party Answer).

STONCOR GROUP, INC. commenced a second third-party action against METRO FLOORS, INC. ("Metro Floors") the sub-contractor responsible for the actual installation of the floor, by filing a Second Third-Party Summons and Complaint on June 1, 2010, and subsequently by an Amended Second Third-Party Summons and Complaint on August 31, 2010. (See Ex. "F," Stoncor's Second Third-Party Summons and Complaint and Amended Second Third-Party Summons and Complaint). Metro Floors served an Answer with counter-claims

2

against Stoncor and a cross-claim against ARAMARK on October 5, 2010. (See Ex. "G," Metro Floor's Answer). ARAMARK responded to Metro Floor's cross-claim on October 15, 2010. (See Ex. "H," ARAMARK's Answer to Metro Floor's cross-claim). ARAMARK also cross-claimed against Metro Floor on October 15, 2010. (See Ex. "I," ARAMARK's cross-claim against Metro Floor). Metro Floor answered this cross-claim on October 20, 2010. (See Ex. "J," Metro Floor's Answer to ARAMARK's cross-claim.) Stoncor also answered Metro Floor's counter-claims on November 10, 2010. (See Ex. K, Stoncor's Answer to Metro Floor's counter-claims)

The depositions of plaintiff and ARAMARK were held on March 31, 2011, and June 7, 2011, respectively. (See Ex. "L," Plaintiff's deposition transcript, and Ex. "M," ARAMARK's deposition transcript).

## STATEMENT OF FACTS

**A.  The Incident**

On December 20, 2006, plaintiff was working an overtime shift for a hospital function at the direction of ARAMARK Executive Chef Jerry Rodriguez, plaintiff's supervisor. (See Ex. "L," Plaintiff's deposition, pp. 31-32, 34 ll. 7-11, 18-19). Upon reporting to Mr. Rodriguez, plaintiff was assigned to prepare cold cuts and instructed by Mr. Rodriguez on the specific items to include in the platter. (See Ex. "L," Plaintiff's deposition, p. 43). She went to the dish room from the kitchen to obtain a part for the meat slicer. (See Id.) As she walked between the main kitchen area and the dish room, she allegedly fell and sustained personal injuries. (See Ex. "L," Plaintiff's deposition, p. 53 ll. 11-16).

**B.  ARAMARK**

At the time of the accident, ARAMARK provided Food Service Management Services to Staten Island University Hospital pursuant to an agreement with SIUH. (See Ex. "N,"

3

3416449.5

Management Services Agreement; see also Ex. "M," deposition of ARAMARK by Ted Bochynski, ARAMARK General Manager, p. 116 l. 17 - p. 117 l. 3; see also Ex. "O," affidavit of Ted Bochynski). The contract required ARAMARK to manage the food services, kitchen and dish room facilities at SIUH. (See Ex. "N," Management Services Agreement; see also Ex. "O," affidavit of Ted Bochynski). All of the supervisor and management roles for food services at SIUH were held by ARAMARK supervisors. (See Ex. "M," deposition of ARAMARK by Ted Bochynski, p. 22 ll. 5-9, p. 135; see also Ex. "O," affidavit of Ted Bochynski). The food service management staff consisted exclusively of ARAMARK salaried employees, including the General Manager, Ted Bochynski, Executive Chef Jerry Rodriguez, an Assistant Director of Patient Services, and Patient Service Managers who were responsible for managing the various kitchen shifts. (See Ex. "M," deposition of ARAMARK by Ted Bochynski, p.39; see also Ex. "O," affidavit of Ted Bochynski). No SIUH employees had supervisory or management positions; ARAMARK was in charge of the food services department and fully directed and controlled the hourly employees. (See Ex. "M," deposition of ARAMARK by Ted Bochynski, p. 22 ll. 5-9, p. 135; see also Ex. "O," affidavit of Ted Bochynski). SIUH did not have any supervisor or management level workers for the SIUH food services employees. (See Ex. "M," deposition of ARAMARK by Ted Bochynski, p. 22 ll. 2-9; see also Ex. "O," affidavit of Ted Bochynski). ARAMRAK supplied equipment and cleaning products used by SIUH food services employees. (See Ex. "M," deposition of ARAMARK by Ted Bochynski, pgs. 47-48, 62).

The ARAMARK supervisors were responsible for instructing the SIUH hourly employees, including the cooks, porters, and dietary aides, as to their job functions. (See Ex. "M," deposition of ARAMARK by Ted Bochynski, p. 22 ll. 5-9, p. 135; see also Ex. "O," affidavit of Ted Bochynski). The ARAMARK staff also supervised and evaluated the work

4

3416449.5

product of the SIUH hourly employees. (See Id.). The ARAMARK supervisors determined the work schedule and assignments of the SIUH hourly employees, including scheduling workers' shifts and overtime. (See Ex. "M," deposition of ARAMARK by Ted Bochynski, p. 20; see also Ex. "O," affidavit of Ted Bochynski). The authority to determine work schedules and direct overtime did not require approval or input from SIUH. (See Ex. "M," deposition of ARAMARK by Ted Bochynski, p. 21 ll. 2-14; see also Ex. "O," affidavit of Ted Bochynski).

In his role as the ARAMARK General Manager, Mr. Bochynski's duties also included the hiring and firing of the SIUH hourly employees within the food and kitchen services department in accordance with union guidelines.[2] (See Ex. "M," deposition of ARAMARK by Ted Bochynski, p. 14 ll. 20-25, p. 15 ll. 2-7, p. 22 ll. 10-24; see also Ex. "O," affidavit of Ted Bochynski). Mr. Bochynski also interviewed all potential new food services hires. (See Ex. "M," deposition of ARAMARK by Ted Bochynski, p.17 ll. 14-19; see also Ex. "O," affidavit of Ted Bochynski).

Food services employees assigned to work under ARAMARK's supervision were provided uniforms by ARAMARK, which lacked any emblem distinguishing them as Staten Island University Hospital employees. (See Ex. "M," deposition of ARAMARK by Ted Bochynski, pp. 49-50, and errata sheet ("no logo"); see also Ex. "O," affidavit of Ted Bochynski).

C. **Plaintiff**

Ms. Cipollone began working for Staten Island University Hospital as a dietary worker in June 2001. (See Ex. "L," Plaintiff's deposition, p. 15, l. 14 – p 16 l. 4). She was later promoted to dietary aide. (See Ex. "L," Plaintiff's deposition, p. 17, ll. 16-18). As a dietary aide, plaintiff was responsible for preparing menus and bringing food to the patients. (See Ex. "L," Plaintiff's

---

[2] Plaintiff was a member of 1199SEIU, a healthcare workers' union.

deposition, p. 17, l. 22 – p. 18 l. 5). During a typical work day in December 2006, plaintiff would obtain her work assignments, including the floor and unit where she would be working, from the ARAMARK supervisor on duty or from the assignment wall where the ARAMARK Patient Service Managers (PSM's) posted the assignments. (See Ex. "L," Plaintiff's deposition, p. 27 l.17 – p. 28 l. 8).

Plaintiff would receive instruction and report to ARAMARK management staff including Executive Chef Jerry Rodriguez and ARAMARK General Manager Ted Bochynski. (See Ex. "L," Plaintiff's deposition, p. 30 ll. 3-24). Plaintiff would also receive instruction and report to individual ARAMARK PSM's based on shift assignments. (See Ex. "M," deposition of ARAMARK by Ted Bochynski, p. 39). ARAMARK PSM's managed the work shifts for the hospital's food service workers and created their work schedules and assignments. (See Ex. "L," Plaintiff's deposition, p. 34 ll. 7-11, 18-19 see also Ex. "M," deposition of ARAMARK by Ted Bochynski, pp. 20-22, 39, 135). Plaintiff would also receive assignments directly from ARAMARK Executive Chef Jerry Rodriguez, such as on the date of the alleged incident. (See Ex. "L," Plaintiff's deposition, p.30 ll. 12-22).

## ARGUMENT

### I.     SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a motion for summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to judgment as a matter of law."[3]

---

[3] Fed. R. Civ. P., Rule 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 580 (2d Cir. 1991); *Hayes v. New York City Dept of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996); *Bryan v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

6

Once a moving party has met the initial burden of showing the absence of a genuine issue as to material facts, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial."[4] To withstand a summary judgment motion, the non-moving party must produce "significant probative supporting evidence" upon which a reasonable jury could return a verdict for the non-movant.[5] Bald assertions of conjecture or speculation are insufficient to overcome a motion for summary judgment.[6]

As demonstrated below, there are no genuine issues of material fact with respect to whether plaintiff was a special employee of ARAMARK, and it is entitled to summary judgment as a matter of law on all claims.

## II. SUMMARY JUDGMENT IS WARRANTED BECAUSE ARAMARK WAS PLAINTIFF'S SPECIAL EMPLOYER

### A. Workers' Compensation Benefits Are The Exclusive Remedy For An Injured Worker Of A General Or Special Employer

Under New York's Workers' Compensation Law, workers' compensation benefits are the exclusive remedy when an employee is injured during the course of his or her employment.[7]

A "special employee" is a worker who is transferred for a limited time of whatever duration to the service of another for the purposes of the New York Workers' Compensation Law.[8] If an employee of a general employer is found to be in the special employ of another, the Workers' Compensation Law shall be the exclusive remedy for injuries to the special employee.

---

[4] Fed. R. Civ. P., Rule 56; *See also*, *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).
[5] *Anderson*, 477 U.S. at 248-49.
[6] *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).
[7] Workers' Compensation Law §§ 11 and 29(6).
[8] *Thompson v. Grumman*, 78 N.Y.2d 553, 585 N.E.2d 355, 578 N.Y.S.2d 106 (1991).

7

The special employee will be barred from bringing a negligence action against the special employer for injuries sustained during the course of employment.[9]

The Court of Appeals has held that where the facts and circumstances of a case reveal uncontroverted evidence of exclusive daily control of a special employee's work duties by the special employer, a special employer relationship can be found as a matter of law.[10]

Specifically, the Court of Appeals in *Thompson* held as follows:

> These lent employee cases, not surprisingly, rest on their particular facts. They do not create a per se rule that a question of fact always exists in these cases. They do not require that the question of special employment inevitably go to a jury.
>
> Indeed, though recognized as an exception to the general approach and analysis, we have held that the determination of special employment status may be made as a matter of law where the particular, undisputed critical facts compel that conclusion and present no triable issue of fact.[11]

It is also well-established under New York law that one who is in the general employ of one party may be in the special employ of another, despite the fact that the general employer is responsible for the payment of wages, has the power to hire and fire, has an interest in the work performed by the employee, maintains workers' compensation for the employee, and provides some, if not all, of the employee's equipment.[12] Employees who are employed and paid by one person may nevertheless be employees of another with respect to a particular transaction, even where the general employer is interested in the work.[13]

---

[9] *Thompson* 78 N.Y.2d at 553; *Vanderwerff v. Victoria Home*, 2002 N.Y. Slip Op. 07988 (2d Dept., November 4, 2002); *Carino v. Kenmare Remodeling*, 292 A.D.2d 555, 739 N.Y.S.2d 592 (2d Dept., 2002) *lv. denied*, 98 N.Y.2d 608.
[10] *Thompson* 78 N.Y.2d at 557.
[11] *Id.* at 557-58.
[12] *Brooks v. Chemical Leaman Tank Lines, Inc.*, 71 A.D.2d 405 (1st Dep't 1979); *Thompson 78 N.Y.2d at 554*; *Suarez v. Food Emporium, Inc.*, 16 A.D.3d 152 (1st Dept 2005).
[13] *Id.*

8

The primary factor for consideration in determining whether a special employment relationship exists is "who controls and directs the manner, details, and ultimate result of the employee's work." If it is found that the special employer controls these areas, the plaintiff's exclusive remedy will be the Workers' Compensation Law.[14] Again, of principal importance is the degree of control that the alleged special employer has over the work.[15]

### B. All Admissible Evidence Confirms That Teresa Cipollone Was ARAMARK's Special Employee

In the instant case, the undisputed facts indicate that ARAMARK exercised exclusive control over the plaintiff's daily work activities, including when, where, and what job tasks she would perform and how she was to perform the tasks. The indicia of special employment with ARAMARK are comprehensive and leave no doubt as to the existence of such a relationship:

- ARAMARK supervisors determined the work schedule and assignments of the SIUH food services employees such as plaintiff, including scheduling shifts and overtime, without the input or approval of SIUH.

- All of the supervisor and management roles for food services at SIUH were held by ARAMARK employees.

- SIUH did not have any supervisor or management level workers for the food service department.

- ARAMARK staff supervised and evaluated the work product of the SIUH food service employees.

- ARAMARK's duties included the hiring, firing and reprimanding of the SIUH food service employees within the food services department in accordance with union guidelines.

---

[14] *Shoemaker v. Manpower*, 223 A.D.2d 787, 635 N.Y.S.2d 816, 817 *lv. denied*, 88 N.Y.2d 874 (1996).
[15] *Gannon v. JWP Forest Electric Corporation*, 275 A.D.2d 231, 712 N.Y.S.2d 494, 495 (1st Dept., 2000).

9

3416449.5

- ARAMARK staff interviewed each potential new SIUH food service employee.

- ARAMARK supplied equipment used by the SIUH food service employees within the food services department.

- ARAMARK provided the uniforms worn by each SIUH food service employee.

- The very activity Teresa Cipollone was engaged in at the time of the accident was specifically directed by ARAMARK Executive Chef Jerry Rodriguez.

Ms. Cipollone admitted to these facts at her deposition – there is no dispute as to the extent of ARAMARK's supervisory role with respect to SIUH food service employees in December 2006. Therefore, a special relationship existed as a matter of law and summary judgment is warranted.

### C. This Case Is Analogous To Holdings Where A "Special Employment" Relationship Was Found As A Matter Of Law

In the seminal Court of Appeals case of *Thompson v. Grumman*,[16] the plaintiff, David Thompson, was a general employee of Applied Transportation Service (ATS), but assigned to work at Grumman Aerospace Corporation (Grumman) pursuant to a purchase order agreement between ATS and Grumman. The Court of Appeals affirmed the Appellate Division, Second Department's determination that plaintiff was a special employee of Grumman. The uncontroverted record indicated that Grumman exerted comprehensive control over every facet of plaintiff's work from the time he was assigned to work exclusively at its plant until his accident one year later. In finding that the special relationship existed, the *Thompson* court noted that plaintiff reported daily to a Grumman supervisor, Dan Schmidt, who assigned, supervised, instructed, oversaw, monitored, and directed plaintiff's work duties every workday. Thompson also acknowledged Schmidt as his "supervisor".

---

[16] 78 N.Y.2d 553 (1991).

10

3416449.5

This case is analogous to *Thompson* and warrants a similar determination granting summary judgment to ARAMARK. As in *Thompson*, Teresa Cipollone was a general employee of SIUH, but assigned to work under ARAMARK's exclusive supervision by virtue of the Management Services Agreement between SIUH and ARAMARK. As in *Thompson*, ARAMARK was solely responsible for instructing the hourly employees, including plaintiff, as to her job functions, how to perform her work,[17] as well as for determining her work schedule, assignments and overtime.[18] Indeed, when asked at her deposition to identify her supervisors, Ms. Cipollone named ARAMARK Executive Chef Jerry Rodriguez and ARAMARK General Manager Ted Bochynski.[19]

In *Suarez v. Food Emporium, Inc.,* 16 A.D.3d 152 (1st Dept 2005), plaintiff Heriberto Suarez was employed full-time as a job coach for a community job placement agency. Suarez filled in for a transitional employee whom he had been training when she did not return to the store where she had been assigned. He was injured when he slipped and fell on a wet floor in the store. Plaintiff filed for workers' compensation benefits from the job placement agency, and also brought suit against the store to recover for his injuries. Plaintiff admitted that one of the employees of the store directed him on when to report to work and gave him work orders. The Appellate Division, First Department found that a significant factor in determining special employment status focused on who controlled and directed the manner and details of the employee's work, and held that Suarez had been a special employee of the store.

As in *Suarez*, ARAMARK exercised exclusive control over plaintiff's daily work activities. This exclusive control over plaintiff's work was not just for one day as in *Suarez*, but

---

[17] See Ex. "M," deposition of ARAMARK by Ted Bochynski, p. 22 ll. 5-9, p. 135; see also Ex. "O," affidavit of Ted Bochynski.
[18] See Ex. "M," deposition of ARAMARK by Ted Bochynski, p. 20; see also Ex. "O," affidavit of Ted Bochynski.
[19] See Ex. "L," Plaintiff's deposition, p. 30 ll. 3-24.

11

3416449.5

for the duration of plaintiff's employment, which further compels a finding of summary judgment.[20]

The undisputed facts, and indeed plaintiff's own testimony, clearly establish that plaintiff was supervised by ARAMARK, and that ARAMARK controlled every portion of her work activities from scheduling and overtime to the details of her particular assignments. Indeed, plaintiff's account of the events leading up to her alleged accident warrants a finding that ARAMARK was her special employer. According to plaintiff, on December 20, 2006, she was working overtime *at the request and direction* of ARAMARK Executive Chef, Jerry Rodriguez. Upon arriving for her overtime shift, she *reported to* Mr. Rodriguez in order to receive her assignment, which he informed her would consist of preparing a platter of cold cuts. He *specifically instructed* plaintiff to use a meat slicer and directed her to include specific items in the platter. It was during the course of carrying out the directive of Mr. Rodriguez that plaintiff slipped and fell.

## CONCLUSION

As the undisputed evidence establishes that ARAMARK controlled and directed every part of plaintiff's daily job activities, it is respectfully submitted that a special employment relationship should be found as a matter of law, and that the facts and law compel a finding of summary judgment on behalf of ARAMARK, as plaintiff's sole remedy is governed under the Worker's Compensation Law given her status as ARAMARK's special employee.

---

[20] See also *Szymanski v. Aramark Facility Services Inc.*, 297 A.D.2d 829 (3d Dept 2002) (dismissing plaintiff's complaint upon a finding of special employment where plaintiff's direct supervisor was employed by defendant/special employer and where defendant directed the manner and result of the plaintiff's work, including the work he was performing on the day of the accident); see also *Villanueva v. Southeast Grand St. Guild Hous. Dev. Fund Co.*, 37 A.D.3d 155 (1st Dept 2007) (dismissing plaintiff's action where evidence established that defendant company directed and controlled plaintiff's daily work activities including the manner, details and ultimate result of plaintiff's work); *Richiusa v. Kahn Lumber & Millwork Co.*, 148 A.D.2d 690 (2d Dept 1989) (finding special relationship and dismissing plaintiff's action upon a finding that plaintiff received uniform from defendant company and received instructions and supervision from supervisor of defendant company).

12

3416449.5

Based upon the foregoing, the Defendant/Third Party Plaintiff, ARAMARK HEALTHCARE SUPPORT SERVICES, LLC., respectfully requests that this Court grant summary judgment in favor of ARAMARK on all claims asserted against it.

Dated: White Plains, New York
August 15, 2011

Yours, etc.,

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER, LLP

*[signature]*

Joseph P. Wodarski (JW 0557)
*Attorneys for Defendant/Third-Party Plaintiff*
*ARAMARK HEALTHCARE SUPPORT SERVICES, LLC*
3 Gannett Drive
White Plains, NY 10604
(914) 323-7000
File No.: 00804.00039

13

3416449.5